UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HARMINDER SIDHU,

         *Plaintiff*,

v.

ALISSA EMMEL et al.,

         *Defendants*.

Civil Action No. 23-2963 (TJK)

## MEMORANDUM

Plaintiff is an Indian national living in Australia who alleges that his immigrant visa application has been pending since June 29, 2021, when he filed an I-526 Immigrant Petition by Alien Entrepreneur. ECF No. 1 ("Compl.") ¶¶ 1–2. Section 203(b)(5) of the Immigration and Nationality Act, known as the EB-5 program, provides for visas "to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise." 8 U.S.C. § 1153(b)(5)(A). Under that program, lawful permanent resident status is available to foreign nationals who make a minimum investment in a new commercial enterprise that will create a certain number of full-time jobs in the United States. *See* 82 Fed. Reg. 3211, 3212 (Jan. 11, 2017). Plaintiff has invested $540,000 into a commercial real estate project in San Bernardino and Riverside Counties, California, and thus seeks lawful permanent resident status in the United States. *See* Compl. ¶ 18. And after waiting about 27 months for his application to be adjudicated, he brought this case in October 2023. He alleges that Defendants have unreasonably delayed resolving his visa application and seeks to compel them to issue a final decision. *See generally id.* Defendants move to dismiss for failure to state a claim. For the reasons explained below, the Court will grant the motion and dismiss the case.

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The complaint asserts claims of unreasonable delay under both the Administrative Procedure Act ("APA") and the Mandamus Act, 28 U.S.C. § 1361. In Count I, Plaintiff alleges unreasonable delay under 5 U.S.C. §§ 555(b) and 706(1). The APA requires that agencies pass on matters presented to them "within a reasonable time," 5 U.S.C. § 555(b), and if they fail to do so, authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take' . . . and, second, that the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and *Am. Anti-Vivisection Soc'y v. USDA*, 946 F.3d 615, 621 (D.C. Cir. 2020)).[1]

---

[1] Count II asserts a claim under 5 U.S.C. § 706(2)(A), which requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* Compl. ¶¶ 41–43; ECF No. 4 at 10 ("In count II, Plaintiff asserts that Defendants unreasonably delayed action under . . . § 706(2)(A)."). "But, by the APA's

2

In Count III, Plaintiff invokes the Court's mandamus jurisdiction. Courts may issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[C]onsideration of any mandamus petition starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks and citations omitted). The central question, then, is "whether the agency's delay is so egregious as to warrant mandamus." *Id.* (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).

The same standard applies to claims of unreasonable delay under the APA and the Mandamus Act. *See Norton*, 542 U.S. at 63–64; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). "There is 'no *per se* rule as to how long is too long' to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). Instead, courts rely on the six "*TRAC* factors":

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

---

plain text, a claim for 'agency action unlawfully withheld or unreasonably delayed' arises under § 706(1), not § 706(2)(A)," so to the extent this count is duplicative of Count I, it fails to state a claim for the same reasons described later in this Memorandum. *See Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *7 (D.D.C. Feb. 15, 2024). To the extent Count II is not duplicative of Count I, it still fails to state a claim. "When review is sought 'under [a] general review provision[] of the APA,' like section 706(2)(A), 'the agency action in question must be final agency action.'" *Id.* (quoting *Am. Anti-Vivisection Soc'y*, 946 F.3d at 620). Plaintiff has not alleged that the agency has taken final action here—indeed, the suit seeks relief from the agency's delay in taking such action.

(4) the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (cleaned up); *see also Da Costa*, 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors."); *Mukkavilli v. Jaddou*, No. 23-cv-5138, 2024 WL 1231346, at *1 (D.C. Cir. Mar. 22, 2024).

These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," as each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

In this case, taken together, the *TRAC* factors weigh strongly in Defendants' favor. Thus, even accepting Plaintiff's allegations as true, they do not state a claim for unreasonable delay and the case must be dismissed.[2]

---

[2] Plaintiff argues that dismissal would be "premature" at this stage because unreasonable-delay claims require "further development of the facts." *See* ECF No. 4 at 16–17. But recent D.C. Circuit precedent makes clear that a court may consider the *TRAC* factors at the motion-to-dismiss stage where, as here, the facts alleged do not support a plausible claim of unreasonable delay. *See,*

The first two *TRAC* factors are typically considered together.  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  And the first is often considered the "most important."  *In re Core Commc'ns, Inc.*, 531 F.3d at 855.  The Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

These two factors, taken together, strongly favor Defendants.  "It does not appear that I-526 petitions have a statutory time frame for adjudication, nor does section 1153(b)(5) prescribe how efficiently Defendants should issue EB-5 visas."  *Shihuan Cheng v. Baran*, No. 17-cv-2001 (RSWL), 2017 WL 3326451, at *4 (C.D. Cal. Aug. 3, 2017).  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017).  Thus, lacking a "set timeline, the Court looks to case law for guidance."  *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. July 9, 2021).  In *Da Costa*, the D.C. Circuit found a four-and-a-half-year delay not unreasonable.  80 F.4th at 342.  For their part, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."  *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *5 (D.D.C. Feb. 15, 2024) (quoting *Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)).  Indeed, "[c]ourts in this District consistently have held that two or three years does not constitute an

---

*e.g.*, *Mukkavilli*, 2024 WL 1231346, at *1–2; *Da Costa*, 80 F.4th at 339–40.  And that has been the longtime practice in this District.  *See, e.g.*, *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020); *Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020).  "In applying these factors, the Court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay."  *Ghadami*, 2020 WL 1308376, at *7 n.6.  For the same reasons, the Court will deny Plaintiff's requests for discovery. *See Babaei v. U.S. Dep't of State*, No. 23-cv-1244 (TJK), 2024 WL 1178453, at *6 n.8 (D.D.C. Mar. 19, 2024); *see also* ECF No. 4 at 16–18 (requesting discovery).

unreasonable delay." *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases).

Plaintiff sued in October 2023, just over two years after filing his I-526 petition. His wait time now amounts to nearly three years, because courts "measure the period of delay from the last government action to the issuance of the opinion." *Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022). Simply put, that delay does not approach unreasonable under the relevant caselaw.

In addition, Defendants use a "visa availability" approach to process Form I-526 petitions, *see* ECF No. 3 at 8–10, which the D.C. Circuit has found qualifies as a "rule of reason," satisfying the first *TRAC* factor. *See Da Costa*, 80 F.4th at 343 ("USCIS's current [visa-availability] approach to sequencing the adjudication of Form I-526 petition follows a rule of reason"). And although Defendant asserts that he has raised "specific legal claims" and "factual and legal questions as to whether USCIS has processed his petition using a lawful and procedurally proper rule of reason," ECF No. 4 at 21, he does not plausibly allege that Defendants have not followed this rule. Indeed, nothing about the length of the delay—considered a "rough yardstick" as to whether an agency is observing its rules—suggests otherwise. *Mottahedan v. Oudkirk*, No. 23-cv-3486 (CKK), 2024 WL 124750, at *4 (D.D.C. Jan. 11, 2024). After all, in *Da Costa*, the D.C. Circuit held that, while "undoubtedly maddening," the four-and-a-half-year delay there was "not sufficient to show that USCIS does not follow a rule of reason in processing" the visa applications at issue.[3] 80 F.4th at 339–40, 342.

---

[3] Plaintiff points out that "Congress expressed its intent that immigration benefit applications should be adjudicated within 180 days." Compl. ¶ 38. But "a sense of Congress resolution is not law." *Emergency Coal. to Def. Educ. Travel v. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008). At most, Congress's "aspirational statement" only slightly tilts the second *TRAC* factor

In addition, the context of an agency action and the resources it can bring to bear are important elements of reasonableness. *See Da Costa*, 80 F.4th at 342 ("When an agency faces a shortage of resources to resolve a backlog, we consider those resource limitations and the labor needed to resolve them in assessing agency delay." (citing *Mashpee*, 336 F.3d at 1100, 1102)). In July 2021, just days after Plaintiff filed his petition, statutory authorization for the EB-5 program lapsed. *See* ECF No. 3 at 10–11. A new, reformed program was not established until March 15, 2022, over eight months later. *Id.* Defendants argue that, as the "eight-month lapse in authority was Congressional in nature and left USCIS without the ability to approve Plaintiff's petition," the period when USCIS lacked authority to approve petitions "should not be included in a calculation of the time this petition has been pending as it is attributable solely to Congress, not USCIS." *Id.* at 16. Although the first two factors, taken together, would weigh in Defendants' favor even if this lapse in authorization had never happened, taking the lapse into account in that way would reduce the time Plaintiff has waited to only about 28 months. But regardless of exactly how it is factored in, the D.C. Circuit has suggested that the lapse's impact on processing times *should* be considered in evaluating the agency's reasonableness. *See Da Costa*, 80 F.4th at 342 (four-and-one-half year delay not "unreasonable" "as a matter of law" because of "pause in statutory authorization and the serious practical challenges posed by a global pandemic"). At bottom, these circumstances further underscore why the first and second factors, taken together, weigh in Defendants' favor.[4]

---

in Plaintiffs' favor. *Da Costa,* 80 F.4th at 344 ("This factor somewhat favors Plaintiffs, as they have waited longer than 180 days."). It does no more than that because the "delay has not reached the level of disproportionality [courts] have previously held sufficient to grant relief." *Id.*

[4] Plaintiff argues that "USCIS stopped processing the petition during the lapse despite having the legal authority to continue working on pending petitions." ECF No. 4 at 18. But the D.C. Circuit has held that USCIS was not *required* to continue processing applications during the lapse

7

The fourth *TRAC* factor considers the effect of expedition on an agency's competing priorities. *TRAC*, 750 F.2d at 80. This factor often favors the agency and "carries the greatest weight in many cases." *Milligan*, 502 F. Supp. 3d at 319. In fact, so substantial is its weight that "[t]his Circuit has refused to grant relief" based on the fourth factor "even [when] all the other factors considered in *TRAC* favored it." *Id.* (cleaned up). That is so because courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). In other words, granting expedited agency action is inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants'" with "'no net gain'" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Burwell*, 812 F.3d at 192, and *In re Barr Lab'ys, Inc.*, 930 F.2d at 75).

In this case, Plaintiff "asks for just that." *Dastagir*, 557 F. Supp. 3d at 167. Plaintiff seeks to compel Defendants to decide the visa application at issue within 14 days of this Court issuing an order. Compl. at 12. But because consular "processing capacity is presently a zero-sum game," *Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (cleaned up), his requested relief would amount to a "judicial reordering[] of agency priorities," *Rahman*, 2023 WL 196428, at *4. In other words, Plaintiff seeks to cut to the front of the line. *Cf. Dastagir*, 557 F. Supp. 3d at 169 ("Dastagir offers no basis for judicial line-cutting those also

---

for a program that, after all, no longer existed. *See Da Costa*, 643 F. Supp. 3d at 11 (USCIS was not obligated "to continue adjudicating and processing Forms I-526 for the Regional Center Program during the lapse"); *see also Bromfman v. USCIS*, No. 21-cv-571 (BAH), 2021 WL 5014436 (D.D.C. Oct. 28, 2021) ("To the extent defendants retain any authority to take any action on Regional-Center-Program-based petitions, any further steps that defendants might take to process plaintiff's application would not advance plaintiff's efforts to obtain a Regional Center visa—since Congress has not authorized any." (cleaned up)).

waiting their turn."). Ordering Defendants to immediately adjudicate Plaintiff's visa is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (citing *Skalka*, 246 F. Supp. 3d at 154). And even though "the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). Thus, the fourth *TRAC* factor weighs strongly in favor of Defendants.

Factors three and five involve "the interests prejudiced by delay," including possible effects on "human health and welfare." *TRAC*, 750 F.2d at 80; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors in tandem). Plaintiff cites several impacts on his human welfare. He seeks to reunite with family members who reside in the United States, including his sister and nieces, and cites missing the opportunity to "watch[] them grow and thrive during their formative years," as well as missing their birthdays and family holidays as a "cause of great sorrow." ECF No. 1-2 at 5. Plaintiff also suggests that the uncertainty about his visa adjudication has made it "increasingly challenging" to support his father, who resides in India. *Id.* at 6. He also generally states that the uncertainty has "hindered [his] ability to plan for [his] future" and that the delay has "taken a considerable toll on [his] personal and professional life." *Id.* The Court is sympathetic to his predicament. But "[w]hile the Court does not doubt that [Plaintiff] has an interest in prompt adjudication, so too do many others facing similar circumstances." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021). And to the extent these *TRAC* factors weigh in Plaintiff's favor, it is clear "[t]hey do not 'overcome the other factors that weigh strongly in the Government's favor.'" *Dastagir*, 557 F. Supp. 3d at 168 (citation omitted).

The sixth *TRAC* factor, which provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80, is neutral. Although Plaintiffs allege an unreasonable delay and decry their lack of information about the reasons for that delay, they cite no specific evidence of bad faith or impropriety. *See generally* Compl.

* * *

In summary, after weighing the *TRAC* factors, the Court has little difficulty concluding that Plaintiff has not stated a claim for unreasonable delay of adjudication of his visa application. In fact—unfortunately—his wait time "pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 (D.D.C. 2021). In the end, delays "stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up). And Plaintiff offers no reason for the Court to bump him to the front of the line. For all these reasons, the Court will grant Defendants' motion and dismiss the case. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 20, 2024